THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY

*v.*

THE CENTRAL STOCK-YARD AND TRANSIT COMPANY.

1. All grants of privileges by the state are made subject to the right of the state to prescribe the conditions upon which those privileges shall be enjoyed.

2. The state possesses this power whether it is expressly reserved or not.

3. The complainants seek an injunction to compel the defendants to receive at their stock-yards, from the complainants, live freight carried over their road, and consigned for delivery at the defendants' yards. Injunction refused, first, because the question whether the defendants are subject to any duty to the complainants to receive such freight is, as a matter of law, unsettled; and second, because the injunction asked for is mandatory in its character, and such writs are never, according to the general rule, granted until final hearing.

On an application for an injunction, heard on bill and affidavits, order to show cause and answer and affidavits.

*Mr. Flavel McGee* and *Mr. Joseph D. Bedle,* for complainants.

*Mr. Leon Abbett,* for defendants.

Delaware, &c., R. R. Co. *v.* Central Stock-Yard Co.

VAN FLEET, V. C.

The complainants ask for a preliminary injunction to compel the defendants to perform a duty, which the complainants claim the defendants are bound by law to render to them. By an act passed in 1873 (*P. L. of 1873 p. 920*) the defendants were created a corporation, and given power to locate, construct and maintain all necessary yards and other structures, with aqueducts and railway tracks, for the reception, safe-keeping, feeding, watering and slaughtering of live stock of every description, and for the accommodation and transaction of the business of a general stock-yard and market establishment of live stock ; also to purchase land and build wharves, docks and slips thereon, and to procure and run such vessels as should be necessary for the transaction of their business in transporting live stock and dressed animals from place to place in and about the harbor of New York and the Hudson river. They were also given authority to lay railroad tracks connecting their yards with the several railroads running through the county of Hudson. By an act passed in 1875 (*P. L. of 1875 p. 215*) large police powers were conferred upon the defendants. They were authorized to establish rules and regulations, prohibiting, among other things, every species of gambling, breach of the peace, and other violation of the laws of the state, and to appoint constables, who, by the act, are given power to arrest, without process, all persons who shall be found on the defendants' grounds violating any of the laws of the state, or the rules and regulations established by the defendants. The defendants have established yards, for the purposes mentioned in their charter, at the foot of Sixth street, in Jersey City, having a front on the Hudson river, where wharves have been built for the reception of live stock carried to their yards by water, and railroad tracks have also been laid connecting their yards with the roads of the Pennsylvania Railroad Company and the Erie Railway Company. For the past five years the defendants have carried on, at their yards, a general stock-yard and market business, receiving all the live stock offered to them. A large number of dealers have places of business in the yards, and on three days in each week sales are made at the

yards, when a large number of dealers in live stock and meats assemble there to buy and to sell.

The complainants have control of a continuous line of railway from Chicago to Hoboken, over which they carry daily a large quantity of live stock. The eastern terminus of their road is at Hoboken, distant over a mile from the yards of the defendants. They have no connection by rail with the defendants' yards. Prior to the 15th of July last, the complainants procured the live stock carried over their road and consigned for delivery at the defendants' yard, to be carried from the eastern terminus of their road, to the yards of the defendants, over the track of the Erie Railway Company. On the date last named, the Erie company increased their charge, for this service, from $3 to $5 a car, and the complainants, not being willing to pay the increased rate, made an arrangement, for the same service, with the New York, Susquehanna and Western Railroad Company, who were then using the track of the Pennsylvania Railroad Company running to the defendants' yards. The Pennsylvania Railroad Company subsequently refused to allow their track to be used for this purpose, and the complainants then arranged to have the stock, consigned to them for delivery at the defendants' yards, carried there by floats and delivered at the defendants' wharf. The defendants thereupon gave the complainants notice that they would not permit the complainants' floats to land at their wharf, and also that they would not receive from the complainants any live stock transported over their road. Immediately after this notice was given, the complainants filed the bill in this case. They ask that the defendants may be enjoined from refusing to receive live stock from them.

The special ground upon which the interference of this court is asked, is, that the defendants are engaged, under legislative authority, in the conduct of a business which is public in its nature, and in which the public have an important interest, and that they therefore stand charged with certain duties, which they are bound to render to every citizen who may demand their performance, and to render to each the same measure of service, and on equal terms in respect to compensation. The duty of the

defendants to receive and care for live stock, and give its owner the benefit of the market which has been established at their yards, is likened, by the complainants, to the duty of a common carrier, who, being a public agent, and engaged in a business which is public in its nature, is under a legal duty to serve all who may require his services. That the defendants are subject to legislative control, both in respect to the compensation they shall receive, and the manner in which they shall conduct their business, is a proposition which I regard as entirely free from dispute. They hold certain important privileges under legislative grant. Such grants are always made subject to the right of the state to prescribe the conditions upon which the privileges shall be enjoyed. The state possesses this power, whether it is expressly reserved or not. It is a condition which the law annexes to every public grant of this nature. To this extent, I regard it as entirely clear that the defendants' business is a public business. I am also of opinion that the defendants stand, in respect to their legal duties, in a position very similar to that which a common carrier occupies, bound to serve all who have a right to demand their service, to the best of their ability and on equal terms as to compensation. But, conceding this to be so, a very important question still remains for consideration. Suppose the defendants are under a legal duty to receive all the stock offered to them for safe-keeping, or for slaughter, or for sale, to whom do they owe this duty? To the common carrier of the stock, or to its owner? And if to a common carrier, what common carrier? One whose line or route extends to their yards, or to all, regardless of where their lines or routes terminate? These are important legal questions, which, so far as I am aware, are untouched by judicial decision in this country or elsewhere. A common carrier by rail is under no legal duty to carry freight beyond the termini of his route. He may enter into a contract to do so, but if he does, his obligation will be purely voluntary and not the result of legal compulsion. From this it would seem to be obvious, that, if the defendants owe the complainants the duty which the complainants claim they do, such duty does not arise out of a corresponding duty, which the complainants

owe to others, but must stand on some other consideration of reason or justice, which as yet has not been judicially declared.

The defendants' business is of recent origin. Their duties to common carriers, if any exist, are wholly undefined, and consequently unknown. The power of defining them belongs to the common law courts, and until they have been defined by that tribunal of this state, which, in respect to such matters, exercises an exclusive jurisdiction, this court cannot know that any exist, nor what they are, nor whether an invasion or denial of them constitutes such an injury as this court may, in the rightful exercise of its power, redress by injunction. In the language of Chief-Justice Beasley, no rule of equity is better settled than the doctrine that a complainant is not in a position to ask for a preliminary injunction when the right on which he founds his claim is, as a matter of law, unsettled. *Citizens Coach Co.* v. *Camden Horse R. R. Co., 2 Stew. Eq. 299.* This rule is jurisdictional. It stands as a limitation upon the power of the court, and is, therefore, a law unto the court, which the court must respect and obey.

There is also another important rule, regulating the exercise of the power of the court, which makes it the duty of the court to deny to the complainants the writ they ask. Although they ask for a writ negative in form, it is plain, that what they want, and what must be given to them if their prayer is granted, is a mandatory injunction. They ask that the defendants may be enjoined from refusing to receive live stock from them. Stated plainly, and without any attempt at circumlocution, that means, in view of the facts of this case, that the defendants shall be compelled to act—to receive—and not simply to refrain from acting. So that it is manifest, that, even if the mandate of the court should be expressed in the very words of the complainants' prayer, it would, in its substance and practical effect, be just as mandatory as it would if in plain and direct terms, it commanded the defendants to receive. Injunctions of this kind will not, as a general rule, be granted until final hearing, and they will not be granted then unless necessary to the complete execution of the decree of the court. There are a few exceptions to

this rule. Obstructions to easements, and rights of like nature may be removed by mandatory injunction granted before final hearing, but even in cases of this class the power is exercised with great caution and only in cases of extreme necessity. This subject was exhaustively considered by Chancellor Zabriskie in *Rogers Locomotive Works* v. *Erie Railway Co.*, *5 C. E. Gr. 379*, and the rules laid down by him in that case, have, I believe, always since been considered the established principles of this court. The defendants in that case had refused to carry merchandise, over their road, for the complainants for the legal rates of freight, and the complainants then filed a bill asking for a mandatory injunction to compel the defendants to perform their legal duty. The writ, after argument, was refused distinctly on the ground that it was not within the power of the court to grant it before final hearing The chancellor, at the close of his opinion, cautiously remarks, that he does not intend to intimate any opinion upon the question whether, even on the final hearing, this court had power to give the complainants relief of the kind they asked, that is, to compel a common carrier to receive and carry freight. In ordinary cases, there can be no doubt that the only remedy to which the injured person can resort, where another person, who is under a legal duty to him, refuses to perform such duty, or performs it in a negligent or improper manner, and loss ensues, is an action at law. The case just cited, it will be observed, would be a direct authority against the right of the complainants to the writ they ask, even if the legal right upon which they found their claim, was, as a matter of law, entirely free from doubt or dispute.

The application of the complainants must be denied, with costs.